Paul W. PREISLER, Louise Erbe, Bostic
J. Franklin, and Lucile Riedel,
Plaintiffs,

v.

The SECRETARY OF STATE OF MIS-
SOURI and the Attorney General of
Missouri, Defendants.

Dorothy CHILDS, Sarah Rifkin, and Mar-
tha Leonard, Plaintiffs,

v.

The SECRETARY OF STATE OF MIS-
SOURI and the Attorney General of
Missouri, Defendants.

Civ. A. Nos. 923, 924.

United States District Court
W. D. Missouri,
Central Division.

Jan. 4, 1965.

Paul W. Preisler, St. Louis, Mo., for
plaintiffs. .

Thomas F. Eagleton, Atty. Gen., St.
of Mo., Joseph Nessenfeld, Asst. Atty.
Gen., Jefferson, City, Mo.

Before RIDGE, Circuit Judge and
DUNCAN and OLIVER, District Judges.

PER CURIAM.

In the above-captioned cases we are
called upon to consider the constitution-
ality of the Congressional Apportion-
ment of the State of Missouri, as made

by Chapter 128, R.S.Mo. (Cum.Supp. 1963), V.A.M.S.

Plaintiffs in both of these cases are citizens of the United States, the State of Missouri, and duly qualified voters residing in the Second and Third Congressional Districts of that State. They seek a declaration that the 1961 Congressional Apportionment of Missouri for members in the House of Representatives of the Congress of the United States, as made by the above-cited statute, is unconstitutional; and pray that the defendants be enjoined from performing any further duties relating to the election of Congressmen from Missouri under the above State Statute.

This Three-Judge District Court was duly convened pursuant to 28 U.S.C.A. §§ 2281 and 2284. Our jurisdiction over these cases is premised in Article III, Section 2, of the Constitution of the United States of America; Title 28 U.S.C.A., § 1343(3); 42 U.S.C.A. §§ 1983 and 1988. Venue exists in this Court under 28 U.S.C.A. § 1391(b).

After hearing, these cases were duly submitted for decision on the pleadings and admissions of record. The basic issues in both cases are the same. The facts giving rise thereto are not in dispute and may be stated as follows:

Prior to the 1960 Federal Census, Missouri had a representation of eleven (11) in the House of Representatives of the Congress of the United States. As a result of the 1960 National Census, that representation was reduced to ten (10). Chapter 128, R.S.Mo., supra, was enacted in 1961 by the 71st General Assembly of the State of Missouri for the purpose of dividing that State into ten (10) Congressional Districts.

Since the total population of Missouri, according to the 1960 Census, was 4,319,813, it was divided into Congressional Districts by the Missouri State Legislature as follows:

### District Population Table

| District | Population | Differs from population of 3rd district by | Differs from population of 2nd district by |
|---|---|---|---|
| First | 466,482 | —13,740 | —40,372 |
| Second | 506,854 | +26,632 | |
| Third | 480,222 | | —26,632 |
| Fourth | 418,981 | —61,241 | —87,873 |
| Fifth | 378,499 | —101,723 | —128,355 |
| Sixth | 388,486 | —91,736 | —118,368 |
| Seventh | 436,933 | —43,289 | —69,921 |
| Eighth | 452,385 | —27,837 | —54,469 |
| Ninth | 409,369 | —70,853 | —97,485 |
| Tenth | 381,602 | —98,620 | —125,252 |
| Entire State | 4,319,813. | | |

It is this Congressional Apportionment of the State of Missouri that the plaintiffs in the cases at bar claim is "invidious", as not providing to them "equal representation for equal numbers of people" in the Congress of the United States.

In support thereof, plaintiffs assert that it is apparent in the above tabulation that the population of the Second and Third Congressional Districts of Missouri are approximately 20% to 25% larger than the population of the Fifth Congressional District of that State, and such diversity in population between districts is "invidious" as a matter of law, under Wesberry v. Sanders, 376 U.S. 1–18, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964).

In the light of the foregoing, we think the first thing that should here be noticed is that defendants concede:

"Wesberry v. Sanders (supra) enunciate(s) the principles governing the disposition of these actions * * * and unless the Supreme Court overrules or modifies such decision, it sets forth the law of this case."

Notwithstanding, the defendants argue:

"The real question in the instant cases, conceding the controlling effect of Wesberry, is to determine precisely what Wesberry actually means, in the context of the facts there for decision, by the holding 'as nearly as is practicable, one man's vote in a congressional election is to be worth as much as another's.' "

From that premise, defendants argue that since "there is no disparity" between the weight of individual votes in Missouri's Congressional Apportionment comparable to the uneven "weight of votes" considered in Wesberry v. Sanders, supra; Martin v. Bush, 376 U.S. 222, 84 S.Ct. 709, 11 L.Ed.2d 656 (1964); or Colegrove v. Green, 328 U.S. 549, 66 S.Ct. 1198, 90 L.Ed. 1432 (1946), the present Congressional Districts in Missouri should be ruled constitutional.

In the context of the foregoing, defendants point out that since the average population of Missouri is 431,981, the Second Congressional District of that State, having a population of 506,854, is only "74,873 *over* the ideal average" of population of that State, which "in terms of percentages" establishes that District as containing approximately *17⅓* percent of the population of Missouri as a whole. As to the Third Congressional District in Missouri, they state it "has a population of only 48,241 *over* the average of population of the State of Missouri," a figure which is only approximately *ten* percent more than the average. On the other side of the population picture, defendants point out that "the smallest (Congressional) District (in Missouri), the Fifth, has a population of only 63,-482 *below* the average, a figure which is only approximately *12⅓* percent *under* the ideal average" of the total population in Missouri. From the above premise defendants argue that since it appears that no Congressional District in Missouri varies from the *ideal average* "as much as two percent above ten percent of the population of the State (as a whole) and the lowest only about 1¼ below" 10% of such average, the apportionment here cannot be considered as "invidious".

In support of the argument so made, defendants cite Preisler v. Hearnes, 362 S.W.2d 552, a decision of the Supreme Court of Missouri, en banc, where the Congressional Apportionment of Missouri here questioned was ruled constitutional and sustained as being "as nearly equal in population as may be," as mandated by Article III, Section 45, of the Missouri Constitution, V.A.M.S.; the Fourteenth Amendment to the United States Constitution; Article I, Section 2, of the Missouri Constitution; and, Title 2, Section 2a(c), United States Code. By brief, defendants state:

"Although (they) do not contend that the decision of the Missouri Supreme Court (ante) has any binding effect on this Court or that such decision precludes any further attack on the validity of the districting (here in issue, they) do submit that (such) decision is of persuasive value in construing the meaning to be attributed to the language, 'as nearly equal in population as may be', the standard which plaintiffs urge is required by Wesberry v. Sanders." (Par. added.)

Certiorari was not sought from the decision of the Supreme Court of Missouri in Preisler v. Hearnes, supra. Thus, this Three-Judge United States District Court is placed in the judicially-unenviable role of reviewing a decision of the highest court of the State of Missouri, without previous review thereof by the Supreme Court of the United States.

■ After giving thoughtful consideration to that situation, and the teaching of Wesberry v. Sanders, supra, we think judicial prudence presently de-

mands no more than that we note, defendants' contention *ante* is misleading since there is no "ideal congressional district" established by Chapter 128, R.S. Mo., or such as defendants here assume. Further, Wesberry v. Sanders, supra, teaches that apportionment is void when it appears from the scheme thereof there has been inadequate consideration to equality in population as between districts in the same State. Plaintiffs' contention that matter of "area" consideration for Congressional Apportionment to the effect that "the St. Louis Area (the City of St. Louis and St. Louis County) has three Congressmen while the rest of the State has seven, which means that the St. Louis *Area* as a whole has thirty percent of the State's representation in Congress, while its population is *less than thirty-four* percent of the entire State's population" as considered in Preisler v. Hearnes, supra, cannot be factually sustained. It should be pointed up—in the "area" above mentioned three (3) Congressmen are elected by the inhabitants of three Congressional Districts.

■■ In the light of the foregoing and the undisputed facts above appearing, we emphasize that the Supreme Court of the United States, in Wesberry v. Sanders, 376 U.S. 1, 7–8, 84 S.Ct. 526, 530, ruled:

"* * * that, construed in its historical context, the command of Art. I, § 2 (of the Constitution of the United States), that Representatives (in the Congress) be chosen 'by the People of the several States' means that as nearly as is practicable one man's vote in a congressional election is to be worth as much as another's." (Par. added.)

We think such mandate precludes the consideration of "area" representation as being a valid factor in the determination of Congressional Representation as argued by these defendants, and which was very apparently considered in Preisler v. Hearnes, at l. c. 556–557, of 362 S.W.2d, as a premise for the ruling made by the Supreme Court of Missouri in that case. In the light of Wesberry v. Sanders, supra, it appears that a variance in population difference of 100,000 persons between congressional districts having less than 500,000, is presumptive malapportionment.[1]

■ All that need further be noticed in this opinion is defendants' contention that "Article III, Section 49, of the Constitution of Missouri reserves to the people of (that) state the power to propose and enact or reject laws by the initiative process * * *." In any consideration of that matter it should be noted that the cases at bar were commenced prior to the 1964 General Election held in the State of Missouri, at which Representatives in the Congress were elected. Manifestly, the initiative processes as provided by Article III, Section 49, of the Constitution of Missouri, could not have availed plaintiffs in these cases of any relief from the results of the 1964 election of Representatives in the Congress, if resort thereto had been attempted. As ruled in Lucas v. Forty-Fourth General Assembly of State of Colorado, 377 U.S. 713, 736, 84 S.Ct. 1459, 1473, 12 L.Ed.2d 632, "* * * the fact that a nonjudicial, political remedy may be available for the effectu-

1. Mr. Justice Harlan, in his dissenting opinion in Wesberry v. Sanders, supra, at 376 U.S. 20–21, 84 S.Ct. notes the effectiveness of the majority opinion in that case to be as follows:

"In the last congressional election, in 1962, Representatives from 42 States were elected from congressional districts. In all but five of those States, the difference between the populations of the largest and smallest districts ex-

ceeded 100,000 persons. A difference of this magnitude in the size of districts the average population of which in each State is less than 500,000 is presumably not equality among districts 'as nearly as is practicable,' although the Court does not reveal its definition of that phrase. Thus, today's decision impugns the validity of the election of 398 Representatives from 37 States * * *."

ation of asserted rights to equal representation in a state legislature," standing alone, cannot justify staying "judicial effectuation" of claimed constitutional rights. The existence of initiative process "provides justification only for a court of equity to stay its hand temporarily * * *." (l. c. 737, 84 S.Ct. l. c. 1474.)

This Court has jurisdiction over the above actions because of the federal constitutional issue asserted. We think, however, that no decree should be entered on the issues presented and here argued, until the Legislature of the State of Missouri has once more had an opportunity to deal with the problem here presented for adjudication, which is of vital concern to all the people in that State. As said per curiam in Magraw v. Donovan, D.C., 163 F.Supp. 184, 187, by another Three-Judge District Court (of which the late Circuit Judge John B. Sanborn was a member), where malapportionment was the issue:

"The federal courts are disinclined to rule on matters peculiarly and primarily of state concern. A healthy respect for the division of powers between the central government and the states is conducive to harmonious and effective government on all levels. We must have a 'scrupulous regard for the rightful independence of the state governments,' and should refrain from acting where proper recourse may be had to a branch or tribunal of the state government. (Citing cases) 'The history of equity jurisdiction is the history of regard for public consequences in employing the extraordinary remedy of the injunction.' Railroad Commission of Texas v. Pullman Co., supra, at page 500 of 312 U.S., at page 645 of 61 S.Ct. [85 L.Ed. 971]."

 Here, it appears the State Legislature of Missouri has an unmistakable duty to reapportion the Congressional Districts of that State in accordance with the principles enunciated in Wesberry v. Sanders; Martin v. Bush; and Colegrove v. Green, all supra.

 It should not be presumed that the Legislature of the State of Missouri will refuse to take all necessary action to comply with its duty under the Federal, as well as its own State, Constitution. See: Harvard Law Review, Vol. 78, No. 1, November 1964, pp. 149–157. Therefore, we defer final decision on all issues presented to us in the cases at bar and the relief to be granted thereon, and shall retain jurisdiction thereover, in order to afford the Legislature of the State of Missouri a full opportunity to "heed the constitutional mandates" considered in the above cited authorities, as well as in Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663, and the several more recent apportionment decisions handed down by the Supreme Court of the United States at the October 1963 Term thereof, to be found in 377 U.S. (1964).

It is so ordered.