CATLETT *v.* BEESON

5-3924                                401 S. W. 2d 202

Opinion delivered April 11, 1966

[Rehearing denied April 25, 1966.]

*Bruce Bennett,* Attorney General; *Fletcher Jackson,* Asst. Atty. General, for appellant.

*Spitzberg, Bonner, Mitchell & Hays* and *Charles D. Matthews,* for appellee.

PAUL WARD, Justice. This litigation pertains to the matter of filling the vacancy (for the remainder of this year) in the Fourth Congressional District caused by the resignation of the incumbent, Oren Harris. The principal questions to be resolved are; can the major political parties call a special primary election to select

a nominee and, if so, what counties constitute the Fourth District in which the election shall be held.

On January 17, 1966 Travis N. Beeson, a qualified elector residing in Camden, filed a Complaint for a declaratory judgment and other relief against numerous defendants, including the Chairman of the Democratic State Committee as a representative of the officers and members of the Democratic Party of Arkansas, the Chairman of the Republican State Committee as a representative of the officers and members of the Republican Party of Arkansas, the Governor and Lieutenant Governor of Arkansas, and; all other necessary State Officers and Election Commission members. Separate answers were filed by the Attorney General, representing the State Board of Election Commissioners, and by several other named defendants. Also, an Intervention was filed by George Davis, Jr., a citizen and resident of Washington County.

We deem it unnecessary to set out all the issues raised in the several pleadings since the decisive ones will be mentioned and discussed hereafter.

The issues were presented to the trial court on the pleadings, exhibits and stipulated facts. At the close of the hearing the court made certain findings which we summarize as follows: (a) The court has jurisdiction of the parties and the subject matter; (b) Organized political parties have the right to conduct party primary elections to select nominees to fill the vacancy in this situation; (c) Any such election must be held in the twenty counties comprising the Fourth Congressional District as set out in Act 3 of the First Extraordinary Session of the General Assembly of 1965, and; (d) The intervention filed by George Davis, Jr. should be dismissed.

The final Order of the trial court was in accord with the findings set out above, and this appeal follows.

*One.* The trial court was correct in holding that the

valid Fourth Congressional District is the one created by Act 3 of the First Extraordinary Session of the General Assembly, approved June 1, 1965. This Act names the twenty counties which comprise the Fourth Congressional District. In 1961 the General Assembly passed Act 5 (approved January 23, 1961) which placed twenty-six counties in the District. In the same year, at the Second Extraordinary Session, Act 5 was passed which repealed the afore-mentioned Act 5 and put twenty-eight counties in the District. On February 3, 1965, in the case of *Parks* v. *Faubus,* 238 F. Supp. 62, the Federal District Court invalidated the last mentioned redistricting plan. Thereafter, the General Assembly passed the above mentioned Act which placed twenty counties in said District. This act contained an emergency clause which placed it ''in full force and effect from and after its passage, and approval.'' It was, as previously mentioned, approved June 1, 1965.

It is contended that said Act 3 passed in 1965 is unconstitutional because it results in disfranchising the electors living in the eight counties deleted from the old Fourth Congressional District. We find no merit in this contention because said electors are now living in other congressional districts and are free to exercise the right of voting therein when the occasion arises.

*Two.* The argument is made that Act 3 of 1965 previously mentioned has no application here because it applies to the next regular General Election to be held in November of this year. This argument is, of course, directly in conflict with the plain intent of the Legislature as it is expressed in the emergency clause set out heretofore.

*Three.* The principal issue presented by this appeal seems to revolve around who, if anyone, has authority to call a special primary election to select a nominee from each party. The trial court held that each of the organized political parties had the right to call such an election, and we agree with the holding. The court also

said "it is a difficult task to bring order out of the confusion and complications now existing in the hodge-podge election laws." Again we agree.

Certainly we can find no constitutional or statutory provision which prohibits such special primaries. It is argued that such special primaries are impliedly prohibited by Ark. Stat. Ann. § 3-404 ,(Repl. 1956), but we are not convinced this is true. This section of the statute is § 65 of Act No. 34 of the Acts of 1875, and it reads:

> "When any vacancy shall happen in the office of member of Congress from this State by death, resignation, removal or otherwise, it shall be the duty of the Governor, by proclamation, to order an election to be held, on a certain day to be named in such proclamation, to supply such vacancy, and such election shall be conducted in the same manner, and returns thereof made, as herein prescribed for general elections."

The above copied act was not repealed but it was supplemented by Act 205 of 1957, Ark. Stat. Ann. § 3-201 et seq. (Supp. 1965). Section 3-201 (d) reads, in material parts, as follows:

> "Nominees of any political party to fill a vacancy shall be declared by: (1) certificate of Chairman and Secretary of any convention of delegates; (2) primary election called, held and conducted as required by law; or (3) by petition of electors as provided in Section 3-261, Arkansas Statutes, 1947."

It will be noted that the election which the governor calls under said § 3-404 is an election to "supply" or fill the vacancy, but it is *not* an election to select a *nominee*. We think it clearly appears therefore that the legislature intended to provide for a special primary to select a nominee to run in the special general election called by the governor.

*Four.* George Davis, Jr., a resident of Washington County, (a county not in any of the proposed "districts"), filed an intervention, contending the "election" should be held in the state at large. Otherwise, says the intervenor, the electors in the eight counties deleted from the old district would be disfranchised. We explained in paragraph *"One"* above why said electors are not being disfranchised. Therefore the trial court was correct in dismissing the intervention.

Affirmed.