**John YANCEY, Plaintiff,**

v.

**Orval E. FAUBUS, Governor, Kelly Bryant, Secretary of State, Bruce Bennett, Attorney General, "The Board of Apportionment", Defendants.**

**No. LR-64-C-96.**

United States District Court
E. D. Arkansas, W. D.
Nov. 4, 1965.

Thorp Thomas, Little Rock, Ark., for John Yancey.

Bruce Bennett, Atty. Gen., Little Rock, Ark., for Orval Faubus.

Fines F. Batchelor, Jr., Van Buren, Ark., for Crawford County Bar Ass'n.

Wm. B. Brady, Little Rock, Ark., for Cecil Alexander.

Before MEHAFFY, Circuit Judge, HENLEY, Chief District Judge, and YOUNG, District Judge.

## PER CURIAM.

On January 28, 1965, this court held that the scheme of apportionment of the membership of the Arkansas Legislature prescribed by sections 2 and 3 of Amendment 45 to the 1874 Constitution of the State of Arkansas was unconstitutional, and that defendants, members of the Board of Apportionment created by section 1 of that Amendment, would be required to prepare and put into effect a constitutional reapportionment of both the House of Representatives and the Senate. Yancey v. Faubus, E.D.Ark., 238 F.Supp. 290. An appropriate decree was entered from which there was no appeal.

On May 17, 1965, the Supreme Court of Arkansas held that as a matter of State constitutional law our decision that the former plan of apportionment was invalid did not affect adversely other sections of the Amendment, and that the Arkansas Legislature would continue to consist of a House of Representatives of 100 members and of a Senate of 35 members, and that the Board of Apportionment had the authority under section 1 of the Amendment to make a valid reapportionment. Faubus v. Kinney, 239 Ark. 443, 389 S.W.2d 887.[1]

On July 15 of the current year the Board, in obedience to our decree, filed a plan of reapportionment, which plan is set forth as Appendix A to this opinion. The plan was filed originally with this court and not with the Secretary of State of the State of Arkansas as provided by section 4 of Amendment 45. While the written record before us does not expressly reflect that the plan has ever been filed with the Secretary of State, we have been advised informally

1. In the original proceedings in this court the Board asserted that it possessed the power to reapportion otherwise than was provided by sections 2 and 3 of Amendment 45, and we took the Board at its word. The matter was discussed in our original opinion. Pages 300–302 of 238 F.Supp.

that it was in fact filed with the Secretary after it was filed here.

In due course the plaintiff, John Yancey, a citizen and qualified elector of Pulaski County, filed objections to the plan. Objections have also been filed by intervenors, Cecil L. Alexander and Mac Evans, members of the Arkansas House of Representatives from Cleburne and Van Buren Counties, respectively, and by representatives of the Crawford County Bar Association. Plaintiff objects generally to the plan; the objections of the intervenors are not only general but also specific to the extent that the plan affects the House representation of Cleburne, Crawford, and Van Buren Counties.

The objections have been heard upon documentary evidence, prehearing briefs, and oral argument.

Under the prior apportionment the State of Arkansas contained 75 House districts, with each of the 75 counties being a district; the Senate was made up of members from 26 districts, and the districts and the membership of the Senate were "frozen" on the basis of distribution of Arkansas' population according to the census of 1950.

Under the new plan the State has 44 House districts and 25 Senate districts. Some of the districts of both types contain more than one county and some of both types are to be represented by more than one member.

■ The record before us reflects, and we find, that in preparing and submitting its plan the Board undertook in good faith to make a valid reapportionment of the Legislature in conformity with the principles laid down in what we have called the Reapportionment Cases,[2] which require that both houses of a bi-cameral State legislature be apportioned, insofar as practicable, so that each member of each house represents approximately the same number of people, but permitting limited consideration to be given to other relevant factors such as geography, political subdivisions, and the like. The political philosophy underlying those decisions is frequently referred to by the slogan, "one man, one vote."

■ We further find that the Board in making its reapportionment gave primary consideration to population, as it was required to do; however, the Board in constituting the new districts undertook to respect county lines and to create districts of convenient size and numerous enough to insure maximum representation to the largest possible number of individual counties.

The reapportionment was made with reference to the 1960 census, according to which the ideal or normal ratio for House membership was one Representative for every 17,860 people and one Senator for every 51,028 people. Bearing in mind the Board's approach to the problem, it was inevitable that the plan which the Board produced involved variations in both directions from the ideal ratios for both Houses. While a number of the variations are substantial, none of them exceeds the 15 percent suggested as tolerable in Toombs v. Fortson, N.D. Ga., 241 F.Supp. 65, and Wesberry v. Vandiver, N.D.Ga., 206 F.Supp. 276, rev'd. on other grounds, Wesberry v. Vandiver, 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481.

In attacking the plan the objecting parties contend generally that in creating multi-county and multi-member districts for both Houses the Board acted unconstitutionally, and that the Board's adherence to county lines in creating the respective districts created such dis-

2. Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506; W.M.C.A., Inc. v. Lomenzo, 377 U.S. 633, 84 S.Ct. 1418, 12 L.Ed.2d 568; Maryland Committee for Fair Elections v. Tawes, 377 U.S. 656, 84 S.Ct. 1429, 12 L.Ed.2d 595; Davis v. Mann, 377 U.S. 678, 84 S.Ct. 1441, 12 L.Ed.2d 609; Roman v. Sincock, 377 U.S. 695, 84 S.Ct. 1449, 12 L.Ed.2d 620; Lucas v. Forty-Fourth Colorado General Assembly, 377 U.S. 713, 84 S.Ct. 1459, 12 L.Ed.2d 632.

parities of population among the several districts as to violate the "one man, one vote" philosophy of the Reapportionment Cases.

It is further contended by the intervenors that the inclusion of smaller counties, such as Cleburne, Crawford, and Van Buren, in districts containing one or more counties of large populations in effect disenfranchises the voters in the smaller counties and unconstitutionally discriminates against those voters.

The Board denies that any of those contentions possess merit.

At the outset of discussion we will say that it is not our function to effect revisions of the plan when such revisions are unnecessary to satisfy constitutional requirements. We further recognize that the question is not whether the plan adopted by the Board is the best that could be devised. There are indeed instances where a district is not comprised of the most compatible counties, based on their diverse geographic and political compositions. In fact, it defies imagination to contrive a scheme that would meet with everyone's satisfaction. Moreover, the constitutionality of the plan cannot be measured fairly by reference to isolated, individual examples. We must determine whether the Board has in good faith fashioned a reapportionment plan complying with the rulings of the United States Supreme Court. The Board was faced with a difficult task due to the unequal distribution of the population of the State, in that a solution to one problem might well have given rise to others of equal or greater seriousness. In performing its task, the Board was entitled to some measure of administrative or legislative discretion, and in the permissible area of such discretion we will not substitute our judgment for that of the Board.

In appraising the plan it is our duty to look at it as a whole, to consider its rationality, its historical basis, and its overall conformity or lack of conformity to the requirement that each Representative and each Senator must represent substantially the same number of people so that the vote of each voter will ultimately have approximately the same weight as that of every other voter.

We first consider and reject the contention that the plan is automatically unconstitutional because both Houses will consist in part of multi-member and multi-county districts. We see nothing unconstitutional about a legislative district, whether a House district or a Senate district, consisting of more than one county, or about a county containing more than one legislative district. Cf. Fortson v. Dorsey, 379 U.S. 433, 85 S.Ct. 498, 13 L.Ed.2d 401. In Reynolds v. Sims, supra, 377 U.S. at 577, 84 S.Ct. 1362, the Court recognized that at least one house may have some multi-member districts; and we do not think that such recognition implies a requirement that the other house *must* have only single-member districts. If the apportionment of the membership of a bi-cameral State legislature meets other constitutional tests, we do not think that it is rendered invalid merely because there are multi-member and multi-county districts in both houses. We recognize that this question is not free from doubt, and, of course, if the Supreme Court of the United States holds ultimately that at least one house must be made up of single member districts, the Arkansas Legislature will have to be reapportioned again. But, we are not prepared to anticipate such a holding.

In behalf of Cleburne, Crawford, and Van Buren Counties, as individual counties, it is argued that citizens of those counties will probably be unable to elect representatives who reside therein, and that Faulkner County will monopolize both seats in the 14th District, and that Sebastian County will monopolize the five seats in the 12th District.

Those arguments are fallacious. The Constitution does not require that a person residing in a particular county of a multi-county district be represented in the Legislature by a citizen of his own

county. Under the Board's plan the votes in a multi-county district are cast on a district-wide basis, and election is determined by a district-wide majority or plurality. The representatives chosen to represent the district will represent all of the people of the district. And, it is not necessarily true that the voters residing in the more populous counties of a district will customarily or consistently refuse to support candidates from the less populous counties of the district.

We think that the Board was justified rationally and historically in constructing the reapportioned Legislature along county lines and did not act arbitrarily or capriciously in forming the districts themselves.

The most serious objection made to the plan arises from the variations from the ideal House and Senate ratios of members to people which the plan permits, and it is those variations which have given us our principal concern.

It has been stipulated that the Board considered that the Reapportionment Cases permit a variation of not more than 15 percent above or below the ideal ratios, and it is contended here by the objecting parties that the Board deliberately used the maximum variation supposedly permitted in determining the composition of districts and the number of Representatives or Senators to be allotted to each district. In other words, it is contended that the Board unlawfully employed a "built-in" variation for the purpose of avoiding the requirement of equal representation based on population. Cf. Toombs v. Fortson, supra, 241 F.Supp. at 70.

■ We do not think that the Board's action can fairly be so appraised. When the Board decided to respect the integrity of the counties and to lay out the districts with reference to county lines, variations in district populations followed automatically. It must have been obvious to the Board that population variations between and among the counties of Arkansas would be reflected in deviations in both directions from the ideal ratios in the respective districts, and it appears to us that the Board simply felt that the variations were tolerable if they did not exceed 15 percent either way.

■ It is quite true, as counsel point out, that a variation of not more than 15 percent or any other variation is not permitted automatically by the 14th Amendment. But, the authorities do suggest that a deviation of not more than 15 percent either way is tolerable, and in general the deviations involved in the plan under consideration are substantially less than 15 percent.

In general, the Senate deviations are not great, and in only one District is the 15 percent figure approached closely. In four of the 25 Districts the deviation from the ideal is less than one percent. The average variation in the 13 over represented Senate Districts is 4.97 percent, and the average variation in the 12 under represented Districts in that House is 4.61 percent. The spread between those average variations is 9.58 percent.

Deviations from the ideal ratio are somewhat more marked in the House than in the Senate. In the House the average over representation is about 6.84 percent, and the average under representation is about 6.65 percent. Those variations from the ideal do not greatly exceed either way the Senate variations, but the spread is wider, being 13.49 percent.

We recognize that in both Houses there are individual variations both above and below the averages, but with its imperfections, the plan is certainly an improvement over the apportionment which existed prior to the Board's action, and the Board's plan goes far toward correcting the imbalance in representation of the rural over the urban areas of the State which brought about the litigation in the first place. We are persuaded that the plan should be given our approval.

A decree will be entered approving the plan, overruling the objections of plaintiff thereto, and dismissing the interventions. Each side will bear its own costs.

APPENDIX A

EXHIBIT A

HOUSE OF REPRESENTATIVES

| DISTRICT | COUNTY | NO. OF REPRESENTATIVES | TOTAL POPULATION | VARIANCE |
|---|---|---|---|---|
| 1 | Benton | 2 | 36,272 | 1.5% |
| 2 | Carroll & Madison | 1 | 20,352 | 13.93% |
| 3 | Boone | 1 | 16,116 | 9.77% |
| 4 | Marion, Searcy & Pope | 2 | 35,342 | 1.07% |
| 5 | Baxter, Fulton | 1 | 16,600 | 7.07% |
| 6 | Randolph, Clay | 2 | 33,778 | 5.42% |
| 7 | Washington | 3 | 55,797 | 4.11% |
| 8 | Newton, Johnson | 1 | 18,384 | 2.91% |
| 9 | Stone, Izard, Sharp | 1 | 19,379 | 8.49% |
| 10 | Lawrence | 1 | 17,267 | 3.34% |
| 11 | Greene, Craighead | 4 | 72,501 | 1.46% |
| 12 | Crawford, Sebastian | 5 | 88,003 | 1.47% |
| 13 | Franklin, Logan, Yell | 2 | 38,110 | 6.67% |
| 14 | Van Buren, Cleburne, Faulkner | 2 | 40,590 | 13.6% |
| 15 | Independence | 1 | 20,048 | 12.22% |
| 16 | Jackson, Woodruff | 2 | 36,797 | 2.99% |
| 17 | Poinsett | 2 | 30,834 | 13.69% |
| 18 | Mississippi | 4 | 70,174 | 1.79% |
| 19 | Scott, Polk | 1 | 19,278 | 7.91% |
| 20 | Montgomery, Garland | 3 | 52,067 | 2.84% |
| 21 | Conway | 1 | 15,430 | 13.6% |
| 22 | Perry, Pulaski | 13 | 247,907 | 6.75% |
| 23 | White, Lonoke | 3 | 57,296 | 6.91% |
| 24 | Prairie, Arkansas | 2 | 33,870 | 5.19% |
| 25 | Monroe | 1 | 17,327 | 3.00% |
| 26 | Cross | 1 | 19,551 | 9.44% |
| 27 | St. Francis | 2 | 33,303 | 6.78% |
| 28 | Crittenden | 3 | 47,564 | 11.24% |
| 29 | Lee, Phillips | 4 | 64,998 | 9.03% |
| 30 | Sevier, Little River | 1 | 19,367 | 8.41% |
| 31 | Howard, Pike | 1 | 18,742 | 4.91% |
| 32 | Saline, Hot Spring | 3 | 50,849 | 5.11% |
| 33 | Grant, Jefferson | 5 | 89,669 | .39% |
| 34 | Hempstead | 1 | 19,661 | 10.05% |
| 35 | Clark, Nevada | 2 | 31,650 | 11.41% |
| 36 | Dallas, Cleveland | 1 | 17,466 | 2.22% |
| 37 | Lincoln, Desha | 2 | 35,217 | 1.42% |
| 38 | Miller | 2 | 31,686 | 11.31% |
| 39 | Lafayette, Columbia | 2 | 37,430 | 4.76% |
| 40 | Ouachita | 2 | 31,641 | 11.43% |
| 41 | Calhoun, Union | 3 | 55,509 | 3.57% |
| 42 | Bradley, Ashley | 2 | 38,249 | 7.05% |
| 43 | Drew | 1 | 15,213 | 14.83% |
| 44 | Chicot | 1 | 18,990 | 6.39% |

## EXHIBIT B
### SENATE

| DISTRICT | COUNTY | NO. OF SENATORS | TOTAL POPULATION | VARIANCE |
|---|---|---|---|---|
| 1 | Benton, Carroll | 1 | 47,556 | 6.81% |
| 2 | Washington | 1 | 55,797 | 9.32% |
| 3 | Madison, Crawford, Franklin, Johnson | 1 | 53,020 | 3.88% |
| 4 | Sebastian, Scott, Logan, Polk | 2 | 101,920 | .14% |
| 5 | Howard, Sevier, Hempstead, Nevada | 1 | 51,395 | .07% |
| 6 | Pike, Clark, Dallas, Grant | 1 | 47,630 | 6.67% |
| 7 | Montgomery, Garland | 1 | 52,067 | 2.02% |
| 8 | Pope, Yell, Conway, Perry | 1 | 53,474 | 4.77% |
| 9 | Boone, Marion, Baxter, Newton, Searcy | 1 | 46,187 | 9.5% |
| 10 | Saline, Hot Spring | 1 | 50,849 | .36% |
| 11 | Little River, Miller, Lafayette | 1 | 51,927 | 1.74% |
| 12 | Ouachita, Columbia | 1 | 58,041 | 13.72% |
| 13 | Union | 1 | 49,518 | 2.97% |
| 14 | Stone, Van Buren, Cleburne, Faulkner | 1 | 46,884 | 8.13% |
| 15 | Fulton, Izard, Sharp, Randolph, Lawrence | 1 | 49,529 | 2.95% |
| 16 | Independence, White | 1 | 52,793 | 3.44% |
| 17 | Jackson, Woodruff, Prairie | 1 | 47,312 | 7.29% |
| 18 | Pulaski, Lonoke | 5 | 267,531 | 4.83% |
| 19 | Cleveland, Calhoun, Bradley, Ashley | 1 | 51,184 | .28% |
| 20 | Jefferson, Lincoln | 2 | 95,820 | 6.12% |
| 21 | Monroe, Lee, Arkansas, Phillips | 2 | 105,680 | 3.53% |
| 22 | Desha, Drew, Chicot | 1 | 54,973 | 7.71% |
| 23 | Clay, Greene | 1 | 46,456 | 8.97% |
| 24 | Craighead, Mississippi, Poinsett | 3 | 148,311 | 3.12% |
| 25 | Cross, Crittenden, St. Francis | 2 | 100,418 | 1.62% |