LESTER C. JONES, GLENN T. HOFFMAN AND H. MILTON FLITCRAFT, PLAINTIFFS, v. ROBERT M. FALCEY, ACTING SECRETARY OF STATE OF THE STATE OF NEW JERSEY, ARTHUR J. SILLS, ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, CHARLES W. SANDMAN, JR., PRESIDENT OF THE SENATE OF THE LEGISLATURE OF NEW JERSEY, AND MARION W. HIGGINS, SPEAKER OF THE GENERAL ASSEMBLY OF THE LEGISLATURE OF NEW JERSEY, DEFENDANTS.

FRANK C. OSMERS, JR., DOUGLAS RUTHERFURD, JOHN LINDSON, NEIL F. DEIGHAN, SAMUEL ELACQUA, THE UNION COUNTY COUNCIL A. F. L. C. I. O., WILLIAM L. STUBBS, HYMAN B. MINTZ, J. RUSSELL WOOLLEY, JOSEPH C. IRWIN, BENJAMIN H. DANSKIN, HARRY J. LARRISON, JR., MARCUS DALY AND GEORGE BUCKWALD, PLAINTIFFS-INTERVENORS, v. ROBERT M. FALCEY, ETC., ET ALS., DEFENDANTS.

MURRAY S. ABOFF, MERELYN DOLINS, AND MAMIE J. VAN HORNE, PLAINTIFFS-INTERVENORS, v. ROBERT M. FALCEY, ETC., ET ALS., DEFENDANTS.

Superior Court of New Jersey
Chancery Division

Decided July 8, 1966.

See also 88 *N. J. Super.* 273, 212 *A.* 2d 40.

Civil action. Conclusions.

*Mr. W. Louis Bossle* for plaintiffs Lester C. Jones, Glenn T. Hoffman and H. Milton Flitcraft.

*Mr. Sidney P. McCord, Jr.* for plaintiffs-intervenors Frank C. Osmers, Jr., Douglas Rutherfurd, John Lindson, Neil F. Deighan, Samuel Elacqua, The Union County Council A. F. L.-C. I. O., William L. Stubbs, Hyman B. Mintz, J. Russell Woolley, Joseph C. Irwin, Benjamin H. Danskin, Harry J. Larrison, Jr., Marcus Daly and George Buckwald (*Messrs. McCord, Farrell, Eynon & Munyon,* attorneys).

*Mr. S. David Levy* for plaintiffs-intervenors Murray S. Aboff, Merelyn Dolins, and Mamie J. Van Horne (*Messrs. Covine and Levy,* attorneys).

*Mr. Joseph A. Hoffman,* Assistant Attorney General, for defendants Robert M. Falcey, Acting Secretary of State of the State of New Jersey, Arthur J. Sills, Attorney General of the State of New Jersey, Charles W. Sandman, Jr., President of the Senate of the Legislature of New Jersey, and Marion W. Higgins, Speaker of the General Assembly of the Legislature of New Jersey.

WICK, J. S. C. This court heretofore determined that the prior congressional apportionment statute of New Jersey was unconstitutional under the cases of *Reynolds v. Sims,* 377

*U. S.* 533, 84 *S. Ct.* 1362, 12 *L. Ed. 2d* 506 (1964), and *Baker v. Carr,* 369 *U. S.* 186, 82 *S. Ct.* 691, 7 *L. Ed. 2d* 663 (1962), and reserved unto itself the right to further action in the event the Legislature failed to act on reapportionment by July 1, 1966.

The Legislature has now passed two bills, *Senate No.* 469 and *Senate No.* 481, now *chapters* 156 and 183, *Laws of* 1966, upon the signatures of the Governor and Acting Governor on June 18, 1966 and June 27, 1966, respectively.

Plaintiffs and the intervenors attack these laws on constitutional grounds, asserting that there has been demonstrated a pattern of general disregard for the lines of established political subdivisions, citing the break-up of Newark and Jersey City and the counties of Union, Middlesex, Ocean and Camden; and that in disregarding established political lines there is no excuse for deviations of plus 7.1% to minus 7.3%, and particularly is this so after the passage of the amending statute which creates a deviation up to plus 8.7%; and further, that both statutes change the alignment of Bergen County from an east-west division to a north-south division.

The basic law is found in *Reynolds v. Sims,* and *Baker v. Carr, supra,* and in *Westberry v. Saunders,* 376 *U. S.* 1, 84 *S. Ct.* 526, 11 *L. Ed. 2d* 481 (1964), wherein the United States Supreme Court held that the constitutional requirement in *Article I, Section II,* that representatives be chosen "by the People of the several States," means that as nearly as practicable one person's vote in a congressional election is to be worth as much as another's.

Proofs were presented in the form of a television interview of Senator Jeremiah F. O'Connor held on Sunday, June 5, 1966, which is of questionable value as evidence; the report of the "Meyner Commission"; the two bills enacted into law; the legislative history of the two bills; the voting record of the three municipalities moved by *chapter* 183, and judicial notice was asked to be taken of the census of these moved municipalities as set forth in the 1964 and 1965 Legislative Manuals.

Plaintiffs and intervenors contend that in reference to congressional redistricting, the courts without exception have held that numerical equality of districts is the ultimate goal. Deviations have been permitted from numerical precision where necessary to accommodate other permissible factors. *Preisler v. Hearnes*, 362 *S. W. 2d* 552 (*Mo. Sup. Ct.* 1962), held against the contention of plaintiff that more equal apportionment could have been achieved by dividing counties. The court said:

"However, counties are important governmental units in which the people are accustomed to working together. Therefore it has always been the policy of this state in creating districts of more than one county (congressional, judicial or senatorial) to have them composed of entire counties."

The Missouri Legislature departed from this only with regard to its two largest counties, where the cities of St. Louis and Kansas City were located. The court further observed:

"Therefore, any redistricting agreed upon must always be a compromise. Mathematical exactness is not required or in fact obtainable and a compromise, for which there is any reasonable basis, is an exercise of legislative discretion that the courts must respect."

Recognition of political subdivisions was dealt with in *Baker v. Clement*, 247 *F. Supp.* 886 (*D. C. M. D. Tenn.* 1965); *Drum v. Seawell*, 249 *F. Supp.* 877 (*D. C. M. D. N. C.* 1965), and specifically in *Reynolds v. Sims*, 377 *U. S.* 533, 84 *S. Ct.* 1362, 12 *L. Ed. 2d* 506 (1964), where the court said:

"A State may legitimately desire to maintain the integrity of various political subdivisions, insofar as possible, and provide for compact districts of contiguous territory in designing a legislative apportionment scheme. Valid considerations may underlie such aims. Indiscriminate districting, without any regard for political subdivision or natural or historical boundary lines, may be little more than an open invitation to partisan gerrymandering. Single-member districts may be the rule in one State, while another State might desire to achieve some flexibility by creating multi-member or floterial districts. Whatever the means of accomplishment, the overriding objective must be substantial equality of population among the various districts, so that

the vote of any citizen is approximately equal in weight to that of any other citizen of the State." (84 *S. Ct.*, at *p.* 1390, 12 *L. Ed. 2d*, at *p.* 537)

As heretofore mentioned, *chapter* 183 does cross six county lines, leaving intact the 15 remaining counties. Oddly enough, plans submitted by both groups of intervenors also cross six county lines.

In *Roman v. Sincock,* 377 *U. S.* 695, 84 *S. Ct.* 1449, 12 *L. Ed. 2d* 620 (1964), concerning the State of Delaware, Chief Justice Warren said:

"* * * Rather, the proper jurisdictional approach is to ascertain whether, under the particular circumstances existing in the individual State whose legislative apportionment is at issue, there has been a faithful adherence to a plan of population-based representation, with such minor deviations only as may occur in recognizing certain factors that are free from any taint of arbitrariness or discrimination."

██ The court is called upon to decide as a matter of fact that by interfering with county lines, by creating districts with such so-called large deviations, and the realignment of Bergen County, that partisan gerrymandering has taken place and therefore the act is unconstitutional. Factually, the court cannot find that the districts so created are done so with the taint of arbitrariness or discrimination.

That the court might agree that there has been partisan gerrymandering is of no benefit to plaintiffs and intervenors. As stated in *WMCA v. Lomenzo,* 238 *F. Supp.* 916 (*S. D. N. Y.* 1965), such an issue is nonjusticiable. The case was affirmed *per curiam* by the United States Supreme Court, 382 *U. S.* 4, 86 *S. Ct.* 24, 15 *L. Ed. 2d* 2 (1965), and in a concurring opinion, Justice Harlan said:

"In WMCA, Inc. v. Lomenzo, D. C., 238 F. Supp. 916, the three-judge court found that Plan A satisfied this order; in so doing it rejected contentions that apportioning on a basis of citizen population violates the federal Constitution, and that partisan 'gerrymandering' may be subject to federal constitutional attack under the Fourteenth Amendment. In affirming this decision, this Court necessarily affirms these two eminently correct principles."

██ The overtone of racial discrimination by the creation of the Eleventh and Twelfth Districts by *chapter* 183 is not proven as a fact, and the law therefor is fully set forth in *Wright v. Rockefeller,* 376 *U. S.* 52, 84 *S. Ct.* 603, 11 *L. Ed. 2d* 512 (1964), and *Honeywood v. Rockefeller,* 214 *F. Supp.* 897 (*D. C. N. Y.* 1963), affirmed 376 *U. S.* 222, 84 *S. Ct.* 708, 11 *L. Ed. 2d* 656 (1963).

The question of numerical distribution of voters within respective districts has been passed upon many times, with greater deviations than that created by *chapter* 183 being approved. *Harrison v. Shaffer,* Docket No. 854 (Feb. 28, 1966), affirmed 383 *U. S.* 269, 86 *S. Ct.* 929, 15 *L. Ed. 2d* 750 (1966); *Yancey v. Faubus,* 251 *F. Supp.* 998 (*E. D. Ark., W. D.* 1965), affirmed *Crawford County Bar Ass'n v. Faubus,* 383 *U. S.* 271, 86 *S. Ct.* 933, 15 *L. Ed. 2d* 750 (1966); *Toombs v. Fortson,* 241 *F. Supp.* 65 (*D. M. D. Ga.* 1965); *Stout v. Bottorff,* 249 *F. Supp.* 488 (*E. D. Ind.* 1965); *Bush v. Martin,* 251 *F. Supp.* 484 (*S. D. Tex.* 1966); *Moore v. Moore,* 246 *F. Supp.* 578 (*S. D. Ala.* 1965); *Wright v. Rockefeller, supra;* and for state legislatures, *Dungan v. Sawyer,* 253 *F. Supp.* 352 (*D. Nev.* 1966); *League of Nebraska Municipalities v. Marsh,* 253 *F. Supp.* 27 (*D. Neb.* 1966), and *Nolan v. Rhodes,* 251 *F. Supp.* 584 (*S. D. Ohio* 1965).

██ It is now clear that partisan political gerrymandering is not condemned as violative of the Fourteenth Amendment. *Meeks v. Avery,* 251 *F. Supp.* 245 (*D. Kan.* 1966); *Bush v. Martin, supra; WMCA, Inc. v. Lomenzo, supra.* Allegations of political gerrymandering do not state a claim upon which relief may be granted. *Kilgarlin v. Martin,* 252 *F. Supp.* 404 (*S. D. Tex.* 1966). Further, the court there said,

"The Equal Protection Clause demands that one man's vote be substantially equal in weight to the vote of any other man, no more.

The right protected is the right to vote, which is a personal right, and the federal Constitution guarantees no political party the right to have a state so apportioned that a candidate from such party's membership, or from a particular faction, splinter or segment of such membership, will be elected, nor does it guarantee the right even to

have the best or better, or even poorer, opportunity to be elected. No citizen and no political party or any other group or organization can claim a personal right protected by the federal Constitution which assures him that he or it will be represented in any legislative body by a Republican, a Democrat, or by any member of either such party who claims to be a liberal, a conservative, a moderate, or any other category in the spectrum of viewpoints or leanings embraced within the membership of such party, or by a member of any other group or organization. The constitutionally protected right here under consideration is personal to him, it does not belong to any group or organization with which he may be affiliated, and it is to have his ballot effectively count as one ballot, not substantially less and not substantially more. If this right is properly safeguarded, he has no constitutionally cognizable right to complain."

█ A claim of partisan gerrymandering is always speculative and cannot be the basis of fact. "The only demonstrable way available to fathom the political inclinations of a certain area at any given time is at the ballot box on a given election day." *Kilgarlin v. Martin, supra.*

██ Accordingly, the mechanics of devising a reapportionment plan is essentially legislative in nature and "the inquiry of this court must end when it is satisfied that the judicially ascertainable standard of substantial equality of population in the districts has been achieved." *Kilgarlin v. Martin, supra.*

A judgment of dismissal will be signed upon presentation. No costs.