Cordell D. MEEKS et al., Plaintiffs,

v.

John ANDERSON, Jr., in his official capacity as Governor of the State of Kansas et al., Defendants.

No. KC–1774.

United States District Court
D. Kansas.

April 24, 1964.

272

---

Thomas M. Van Cleave, Jr., Joseph J. Poizner and Conrad Miller, Kansas City, Kan., for plaintiffs.

William M. Ferguson, Atty. Gen., J. Richard Foth and Park McGee, Asst. Attys. Gen., for defendants.

Keith Sanborn, Wichita, Kan., amicus curiae.

Before HILL, Circuit Judge, STANLEY, Chief District Judge, and TEMPLAR, District Judge.

HILL, Circuit Judge.

The action was brought by qualified voters in four of the five Congressional Districts of Kansas, seeking to have Kansas Statutes, G.S.1961 Supp. §§ 4–114 to 4–119, which is the last congressional reapportionment by the Kansas Legislature, declared unconstitutional. A three-judge court was convened pursuant to 28 U.S.C.A. §§ 2281, 2284, and the case was submitted upon stipulated facts and without the taking of any oral testimony.[1] By agreement of the parties, the sole question is whether the congressional reapportionment statutes violate Article I, Section 2 of the Constitution of the United States.

By the statute under consideration the state was divided into five congressional districts, with the 1960 U. S. Census being used as the population guide. This reapportionment resulted in an imbalance of population between the five districts and the subsequent state census reports of 1962 and 1963 reveal even greater imbalances.[2] At the time of the passage of the Act, using the 1960 Federal Census, there was a disparity in population between the first and fifth districts of 166,009. By 1963, the greatest disparity between the districts was 176,406 when comparing the first and fifth districts. The Federal Census of 1960 showed Kansas to have a population of 2,178,611. Using this population basis in the creation of five districts the norm of each district would be 435,722. Viewing the three census figures, 1960, 1962 and 1963, shown in footnote 2, only two of the five districts, the second and fourth, are near the norm. The facts clearly establish that there is a disparity in population among the districts created by the statutes in question. In this connection,

---

1. At the pre-trial conference several exhibits were offered by the plaintiffs. The identity of all of them was admitted by the defendants but objection was made to some of them on the grounds that they were irrelevant and immaterial. The court finds all of such exhibits to be relevant and material and they are considered a part of the record in the case.

2. The population figures for the existing districts are as follows:

| District | 1960 Federal Census | 1962 State Census | 1963 State Census |
|---|---|---|---|
| First | 539,592 | 548,401 | 548,933 |
| Second | 446,621 | 431,590 | 434,274 |
| Third | 377,406 | 388,269 | 395,059 |
| Fourth | 441,409 | 423,566 | 421,503 |
| Fifth | 373,583 | 373,183 | 372,527 |

the disparity in Kansas is not as great as that existing in some other states but, as we see the law by which we are to be guided, existing disparity in other states has nothing to do with our question.

█ This Court has jurisdiction to hear and determine the question of whether the variance in population renders the state statutes fatally defective under federal constitutional standards. See Wesberry v. Sanders, 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481; Bush v. Martin, 224 F.Supp. 499 (S.D.Tex.1963), aff'd, Martin v. Bush, 376 U.S. 222, 84 S.Ct. 709, 11 L.Ed.2d 656; Calkins v. Hare, 228 F.Supp. 824 (E.D.Mich.1964); Thigpen v. Meyers, 211 F.Supp. 826 (W. D.Wash.1962), appeal pending, 376 U.S. 902, 84 S.Ct. 656, 11 L.Ed.2d 604; Maryland Citizens Committee for Fair Cong. Redist. v. Tawes, 226 F.Supp. 80 (D.Md. 1964). See also Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663. In Wesberry the Supreme Court, in commenting upon the criteria to be used in apportioning congressional districts, said: "We hold that, construed in its historical context, the command of Art. I, § 2, that Representatives be chosen 'by the People of the several States' means that as nearly as is practicable one man's vote in a congressional election is to be worth as much as another's. * * *" and " * * * [t]he history of the Constitution, particularly that part of it relating to the adoption of Art. I, § 2, reveals that those who framed the Constitution meant that, no matter what the mechanics of an election, whether statewide or by districts, it was population which was to be the basis of the House of Representatives." (376 U.S. at pages 7 and 8, 84 S.Ct. at page 530, 11 L.Ed.2d at pages 486 and 487) The plain objective of the Constitution is to make " * * equal representation for equal numbers of people the fundamental goal for the House of Representatives. * * *" Wesberry v. Sanders, supra, 376 U.S. at page 18, 84 S.Ct. at page 535, 11 L.Ed.2d at page 492.

█ In our opinion the decision in Wesberry compels the conclusion that one factor, and only one, may be taken into account in apportioning and establishing the congressional districts among the people of a state and that factor is population. See Calkins v. Hare, supra, 228 F.Supp. at page 824; Bush v. Martin, supra, 224 F.Supp. at page 511. And, that is the test which must be applied to the facts of this case.

Can it be legally concluded that congressional districts which vary in population by at least 166,009 provide "equal representation for equal numbers of people" or that "as nearly as is practicable one man's vote" in an election conducted under such circumstances is "worth as much as another's"? Without going into an extended discussion as to the precise meaning of the phrase "as nearly as is practicable", we think the question must be answered in the negative. Certainly the vote of one person in a congressional district having a population of 539,592 is not worth as much as the vote of another person in a district having a population of only 373,583. As the undisputed evidence shows there is a deviation from equal apportionment among the districts of at least 38 per cent. It can therefore hardly be concluded that the votes are "as nearly as is practicable" equal.

█ This is especially true where, as here, it has been demonstrated by undisputed evidence that the congressional districts can be apportioned in a more nearly equal manner. We hold that the statutes in question, i. e., Kan.G.S.1961 Supp., §§ 4–114 to 4–119, inclusive, do not conform to federal constitutional requirements and accordingly are declared to be unconstitutional and null and void.

█ This brings us to the matter of the relief to be granted. The plaintiffs request that this court enjoin and restrain the defendants from enforcing and conducting elections under the statutes in question until such time as congressional districts are established by valid legislation and, pending the enactment of such valid legislation, order that the members of the House of Representatives from the State of Kansas be nominated and elected on a state-wide or at

large basis. It must, of course, be recognized that such relief is proper in an appropriate case and, indeed, has been granted in the type of case presently before us. See Calkins v. Hare, supra, and Bush v. Martin, supra. However, in its disposition of the Bush case, the Supreme Court continued in effect a stay order entered by Circuit Justice Black, upon appeal, until the appellants had an opportunity to apply to the district court " * * * for further equitable relief in light of the present circumstances including the imminence of the forthcoming election and 'the operation of the election machinery of Texas' noted by the District Court in its opinion." (376 U.S. at page 222, 84 S.Ct. at page 709, 11 L. Ed.2d at page 656)

We agree that this disposition is not to be read as " * * * a nationwide directive to the District Courts to leave things be. * * * " Calkins v. Hare, supra, 228 F.Supp. at page 824. But, we also agree with much of the reasoning advanced by Judge O'Sullivan, who dissented in Calkins, 228 F.Supp. at page 824.[3]

The Federal Courts have shown considerable forbearance in implementing the decision in Baker v. Carr, 369 U.S. 186, concerning reapportionment of state legislatures, by withholding injunctive relief until the state legislature has had an opportunity to act. See e. g., Baker v. Carr, 206 F.Supp. 341 (M.D.Tenn.

1962); State of Wisconsin v. Zimmerman, 209 F.Supp. 183 (W.D.Wis.1962); League of Nebraska Municipalities v. Marsh, 209 F.Supp 189 (D.Neb.1962); Lisco v. McNichols, 208 F.Supp. 471 (D. Colo.1962); Moss v. Burkhart, 207 F. Supp. 885 (W.D.Okla.1962). In addition, we note that the Kansas Legislature has only recently, and in a special session, been reapportioned and the validity of that apportionment has been upheld by the Kansas Supreme Court. Harris v. Shanahan, Kan., 390 P.2d 772. Thus, the 1965 Legislature will be composed of senators and representatives elected under the new apportionment law.

■ It is our decision that the ends of justice will best be served by permitting the 1964 elections to be held under the present statutes and by withholding injunctive relief until after those elections are held and the newly apportioned state legislature has an opportunity to correct the inequalities of these unconstitutional statutes.

We will therefore enter a decree declaring the existing congressional districting statutes, Kan.G.S.1961 Supp. 4–114 to 4–119, inclusive, to be unconstitutional and null and void. However, we will stay the effective date of the decree until after the 1964 elections have been held and, of course, we will retain jurisdiction to grant such further relief as future developments may warrant.

3. "Becoming restraint has always marked equity's employment of its extraordinary writs. There is nothing about the facts of this case that should, in my view, cast us in the role of avenging angels. * * * "
"We should never withhold our writs when serious damage would flow from such withholding, nor should we hesitate to command instant obedience when public good or private right call for it. But such is not the case before us. The malapportionments that were involved in the cases we follow, Wesberry v. Sanders and Martin v. Bush, were glaring in comparison to the Act we now strike down. * * * Likewise, the immeasurable

wrong to the voters of the entire state which would follow an order that the coming elections be at large, far outweighs quixotic and dramatic vindication of the hypothetical voter whose vote might be diluted to the extent of the above ratios."
"New definitions and new guidelines have put the Federal Courts into position of unprecedented power over state legislatures. The respect that we owe to our coequals in the grand scheme of our government suggests avoiding unseemly displays of power or the flexing of our judicial muscles."