**Charles W. BAKER et al., Plaintiffs,**

v.

**Frank G. CLEMENT, Governor of the State of Tennessee, et al., Defendants.**

**Civ. A. No. 3945.**

United States District Court
M. D. Tennessee,
Nashville Division.

Nov. 19, 1965.

be if, after he has announced his purpose, he is refused admittance."

Walter Chandler and John M. Heiskell, Memphis, Tenn., for plaintiffs.

George F. McCanless, Atty. Gen., and Milton P. Rice, Asst. Atty. Gen., State of Tennessee, Nashville, Tenn., for defendants.

Hobart F. Atkins, Knoxville, Tenn., for intervening petitioner Guy L. Smith.

Gilbert Merritt, Jr., Asst. Director of Law, Metropolitan Government, Nashville, Tenn., for Metropolitan Government of Nashville and Davidson County, Tenn.

Paul R. Leitner, Chattanooga, Tenn., for intervening petitioner Z. Cartter Patten.

Jack McNeil, Memphis, Tenn., for intervening petitioners–residents of Shelby County, Tenn.

George O. Benton, Jackson, Tenn., for intervening Commissioners of Elections for Madison County, Tenn.

Before PHILLIPS, Circuit Judge, MILLER, Chief District Judge, and GRAY, District Judge.

PER CURIAM.

This case presents the question of whether the statute creating Tennessee's nine congressional districts violates Article 1, Section 2 of the Constitution of the United States.

This statute, Chapter 4, Public Acts of the Extraordinary Session of 1965, T. C.A. § 2–502 (1965 Supp.),[1] amended the existing code section bearing the same number, which was codified from Chapter 251, Public Acts of 1951. By its terms the 1965 amendment will apply to the primary election of August 1966 and the general election of November 1966. The incumbent members of Congress from Tennessee will continue to represent their districts as they existed prior to the enactment of the 1965 statute until their successors are elected and qualified.

The population of the districts provided by the 1965 statute and the population of the nine Tennessee districts prior to the 1965 amendment,[2] are as follows:

| District | 1965 Act | 1951 Act |
|---|---|---|
| 1 | 441,516 | 460,583 |
| 2 | 453,298 | 497,121 |
| 3 | 436,421 | 412,664 |
| 4 | 411,585 | 389,563 |
| 5 | 399,743 | 399,743 |
| 6 | 341,468 | 324,357 |
| 7 | 344,901 | 232,652 |
| 8 | 380,979 | 223,387 |
| 9 | 357,178 | 627,019 |

1. "2–502. Counties comprising congressional districts.—The congressional districts of Tennessee shall be as follows, to wit:

"First congressional district: Johnson, Carter, Sullivan, Washington, Unicoi, Greene, Hawkins, Hancock, Hamblen, Grainger, Jefferson, Cocke and Sevier.

"Second congressional district: Claiborne, Union, Knox, Blount, Campbell, Anderson, Scott and Morgan.

"Third congressional district: Loudon, Monroe, Polk, McMinn, Meigs, Rhea, Bledsoe, Sequatchie, Marion, Grundy, Hamilton and Bradley.

"Fourth congressional district: Pickett, Fentress, Cumberland, Roane, Clay, Overton, Jackson, Putnam, Smith, Wilson, DeKalb, White, Rutherford, Cannon, Warren, Van Buren, Bedford, Coffee, Marshall, Moore, Lincoln and Franklin.

"Fifth congressional district: Davidson.

"Sixth congressional district: Macon, Trousdale, Sumner, Robertson, Montgomery, Stewart, Houston, Dickson, Cheatham, Humphreys, Hickman, Williamson, Perry, Lewis, Maury, Wayne, Lawrence and Giles.

"Seventh congressional district: Benton, Carroll, Chester, Decatur, Fayette, Hardeman, Hardin, Henderson, Madison, McNairy, and the southeast portion of Shelby County consisting of the following voting wards and precincts of the city of Memphis: 34–1, 34–2, 35–1, 35–2, 35–3, 47–1, 47–2, 47–3, 48, 49–1, 49–2, 50–1, 50–2, 60–1, 60–2, 60–3, 60–4; and the following Shelby County voting districts: Capleville, Collierville, Forest Hill, Germantown, Levi-1, Levi-2, Oakville-1, Oakville-2, Ross' Store, Whitehaven-1, Whitehaven-2, Whitehaven-3, Whitehaven-4, Whitehaven-5, Whitehaven-6, Whitehaven-7, and White Station.

"Eighth congressional district: Crockett, Dyer, Gibson, Haywood, Henry, Lake, Lauderdale, Obion, Tipton and Weakley, and the following voting wards and precincts of the city of Memphis: 40–1, 40–2, 41–1, 41–2, 41–3, 42–1, 42–2, 43–1, 43–2, 43–3, 43–4, 53–2, 62, 69–1, 69–2, 70–1, 70–2, 71, 72–1, 72–2; and the following Shelby County voting districts: Arlington, Bartlett, Brunswick, Cordova, Eads, Ellendale, Kerrville, Locke, Lucy, McConnells, Millington, Morning Sun, Mullins, Raleigh, Scenic Hills, Stewartville and Woodstock.

"Ninth congressional district: shall consist of that part of Shelby County not included in the seventh and eighth congressional districts. [Acts 1951, ch. 251, § 1 (Williams, § 138); 1965 (E.S.), ch. 4, § 1.]"

2. All population figures used in this opinion are according to the federal census of 1960 unless otherwise indicated.

The total population of the State according to the 1960 census is 3,567,089. The average population of the nine congressional districts is 396,343.

This suit was initiated prior to enactment of the 1965 amendment. The original complaint was filed December 1, 1964, as a class action on behalf of all qualified voters of the Ninth Congressional District and "all qualified voters of the State of Tennessee who are, or may become, similarly situated." The original plaintiffs are three registered voters of Shelby County, of which Memphis is the county seat. At that time Shelby County, with a population of 627,019, comprised the ninth congressional district. The original complaint was based upon the disparity between the population of the ninth district, which at that time was the largest in the State, and the populations of the adjoining seventh and eighth districts, with populations of 232,652 and 223,387, respectively.

The 1965 amendment corrected the huge disparity between the ninth district on the one hand and the seventh and eighth districts on the other hand by partitioning Shelby County into three parts, one part consisting of the ninth district and the other two parts being made respectively a part of the seventh and eighth districts.

No question is now raised as to disparity of population as among the seventh, eighth and ninth congressional districts under the terms of the 1965 amendment.

Under date of July 23, 1965, the original plaintiffs filed a supplemental complaint reciting the enactment of the 1965 amendment and stating as follows:

"Plaintiffs believe, and therefore aver, that the 1965 amendatory act constitutes a good faith effort on the part of the General Assembly of Tennessee to reapportion the congressional election districts upon an equitable and representative basis and the congressional districts as now constituted, meet the requirements of the Constitution of the United States."

Plaintiffs now ask that this court find and determine that the 1965 amendment "constitutes a proper and valid apportionment of congressional districts in Tennessee."

Thus, in the present posture of the case, the original plaintiffs are aligned with the defendants, viz: the Governor of Tennessee, the Secretary of State, the State Attorney General and various State and local election officials.

The attack upon the validity of the 1965 amendment is made in three intervening petitions under which the petitioners have been permitted to intervene as parties plaintiff: (1) The petition of Guy L. Smith of Knoxville, a citizen and qualified voter of the second congressional district, on behalf of himself and all other citizens of the first, second, third and fourth congressional districts; (2) the petition of Z. Cartter Patten of Chattanooga, a member of the State Senate and a citizen and qualified voter of the third congressional district, on behalf of himself and the other qualified voters of the first, second and third congressional districts; and (3) the petition of Jack McNeil of Memphis and six other citizens and qualified voters of Shelby County and citizens of the seventh, eighth and ninth congressional districts. All seven of the petitioners under this third petition are members of the Shelby County delegation in the Eighty-Fourth General Assembly of Tennessee.

The intervening petition of Guy L. Smith charges that the 1965 statute is unconstitutional in that it creates gross inequities and malapportionment against the voters and citizens of the first, second, third and fourth districts, all of which have larger populations than the remaining five districts. Particular emphasis is placed upon the fact that the second district, now the largest in the state, has a population of 453,298, which is 111,830 in excess of the population of the sixth district, which has a population of 341,468.

Petitioner Smith submits a proposal for congressional districting which would

result in a difference of only 5,939 between the largest and smallest districts. The Smith proposal is set forth in detail in the margin.[3]

3. The First Congressional District would be composed of:

| | |
|---|---:|
| Carter County with a population of | 41,578 |
| Cocke County with a population of | 23,390 |
| Grainger County with a population of | 12,506 |
| Greene County with a population of | 42,163 |
| Hamblen County with a population of | 33,092 |
| Hancock County with a population of | 7,757 |
| Hawkins County with a population of | 30,468 |
| Johnson County with a population of | 10,765 |
| Sullivan County with a population of | 114,139 |
| Unicoi County with a population of | 15,082 |
| Washington County with a population of | 64,832 |
| **Total:** | **395,772** |

The Second Congressional District would be composed of:

| | |
|---|---:|
| Blount County with a population of | 57,525 |
| Jefferson County with a population of | 21,493 |
| Knox County with a population of | 250,523 |
| Monroe County with a population of | 23,316 |
| Polk County with a population of | 12,160 |
| Sevier County with a population of | 24,251 |
| Union County with a population of | 8,498 |
| **Total:** | **397,766** |

The Third Congressional District would be composed of:

| | |
|---|---:|
| Bradley County with a population of | 38,324 |
| Hamilton County with a population of | 237,905 |
| Loudon County with a population of | 23,757 |
| McMinn County with a population of | 33,662 |
| Meigs County with a population of | 5,160 |
| Rhea County with a population of | 15,863 |
| Roane County with a population of | 39,133 |
| **Total:** | **393,804** |

The Fourth Congressional District would be composed of:

| | |
|---|---:|
| Anderson County with a population of | 60,032 |
| Bledsoe County with a population of | 7,811 |
| Campbell County with a population of | 27,936 |
| Cannon County with a population of | 8,537 |
| Claiborne County with a population of | 19,067 |
| Clay County with a population of | 7,289 |
| Cumberland County with a population of | 19,135 |
| DeKalb County with a population of | 10,774 |
| Fentress County with a population of | 13,288 |
| Franklin County with a population of | 25,528 |
| Grundy County with a population of | 11,512 |
| Jackson County with a population of | 9,233 |
| Macon County with a population of | 12,197 |
| Marion County with a population of | 21,036 |
| Morgan County with a population of | 14,304 |
| Overton County with a population of | 14,661 |
| Pickett County with a population of | 4,431 |
| Putnam County with a population of | 29,236 |
| Scott County with a population of | 15,413 |
| Sequatchie County with a population of | 5,915 |
| Smith County with a population of | 12,059 |
| Trousdale County with a population of | 4,914 |
| Van Buren County with a population of | 3,671 |
| Warren County with a population of | 23,102 |
| White County with a population of | 15,577 |
| **Total:** | **396,058** |

Note 3—Continued

The Fifth Congressional District would be composed of:

| | |
|---|---:|
| Davidson County with a population of | 399,743 |
| **Total:** | 399,743 |

The Sixth Congressional District would be composed of:

| | |
|---|---:|
| Bedford County with a population of | 23,150 |
| Cheatham County with a population of | 9,428 |
| Coffee County with a population of | 28,603 |
| Dickson County with a population of | 18,839 |
| Giles County with a population of | 22,410 |
| Hickman County with a population of | 11,862 |
| Lawrence County with a population of | 28,049 |
| Lincoln County with a population of | 23,829 |
| Marshall County with a population of | 16,859 |
| Maury County with a population of | 41,699 |
| Moore County with a population of | 3,454 |
| Robertson County with a population of | 27,335 |
| Rutherford County with a population of | 52,368 |
| Sumner County with a population of | 36,217 |
| Williamson County with a population of | 25,267 |
| Wilson County with a population of | 27,668 |
| **Total:** | 397,037 |

The Seventh Congressional District would be composed of:

| | |
|---|---:|
| Benton County with a population of | 10,662 |
| Carroll County with a population of | 23,476 |
| Chester County with a population of | 9,569 |
| Crockett County with a population of | 14,594 |
| Decatur County with a population of | 8,324 |
| Gibson County with a population of | 44,699 |
| Hardeman County with a population of | 21,517 |
| Hardin County with a population of | 17,397 |
| Henderson County with a population of | 16,115 |
| Henry County with a population of | 22,275 |
| Houston County with a population of | 4,794 |
| Humphreys County with a population of | 11,511 |
| Lewis County with a population of | 6,269 |
| Madison County with a population of | 60,655 |
| McNairy County with a population of | 18,085 |
| Montgomery County with a population of | 55,645 |
| Perry County with a population of | 5,273 |
| Stewart County with a population of | 7,851 |
| Wayne County with a population of | 11,908 |
| Weakley County with a population of | 24,227 |
| **Total:** | 394,846 |

The Eighth Congressional District would be composed of:

| | |
|---|---:|
| Dyer County with a population of | 29,537 |
| Fayette County with a population of | 24,577 |
| Haywood County with a population of | 23,393 |
| Lake County with a population of | 9,572 |
| Lauderdale County with a population of | 21,844 |
| Obion County with a population of | 26,957 |
| Tipton County with a population of | 28,564 |
| North part of Shelby County with a population of | 232,621 |
| **Total:** | 397,065 |

The Ninth Congressional District would be composed of:

| | |
|---|---:|
| The remaining southern part of Shelby County with a population of | 394,398 |
| **Total:** | 394,398 |

The petition of Z. Cartter Patten reiterates the disparity in population between the second and sixth districts and further avers as follows:

"That plaintiff and other voters of the Third Congressional District are severely prejudiced in that the Third Congressional District is composed of twelve counties with a total population of 436,421 citizens, or 94,953 citizens more than is contained in the Sixth Congressional District. The difference in population between the Third Congressional District and the Sixth Congressional District is almost twenty-eight (28%) per cent of the total population of the Sixth Congressional District. Likewise, the difference in population between the First Congressional District and the Sixth Congressional District is 100,048 citizens, which is in excess of twenty-nine (29%) per cent of the total population of the Sixth Congressional District. The Seventh, Eighth and Ninth Congressional Districts are also unconstitutionally favored."

Intervenor Patten asserts, however, that the Smith proposal "is not the best plan, arithmetically speaking, for congressional redistricting, nor is it practical or feasible. * * * On the contrary * * * such plan * * * would upset and do violence to the balance of power as it is now distributed between the two major political parties within the State." Intervenor Patten submits an alternative proposal which would provide a difference of 6,251 between the largest and smallest districts, averring his plan is "(1) arithmetically constitutional; (2) does as little violence to the present district boundaries as any plan which might be devised; (3) does not place more than one incumbent congressman in the same district and (4) would not radically affect the balance of power between the two major political parties." The Patten proposal is set forth in the margin.[4]

4. The First Congressional District would be composed of:

| | |
|---|---:|
| Carter County with a population of | 41,578 |
| Claiborne County with a population of | 19,067 |
| Cocke County with a population of | 23,390 |
| Greene County with a population of | 42,163 |
| Sevier County with a population of | 24,251 |
| Hancock County with a population of | 7,757 |
| Hawkins County with a population of | 30,468 |
| Johnson County with a population of | 10,765 |
| Sullivan County with a population of | 114,139 |
| Unicoi County with a population of | 15,082 |
| Washington County with a population of | 64,832 |
| Total: | 393,492 |

The Second Congressional District would be composed of:

| | |
|---|---:|
| Blount County with a population of | 57,525 |
| Grainger County with a population of | 12,506 |
| Jefferson County with a population of | 21,493 |
| Knox County with a population of | 250,523 |
| Loudon County with a population of | 23,757 |
| Hamblen County with a population of | 33,092 |
| Total: | 398,896 |

The Third Congressional District would be composed of:

| | |
|---|---:|
| Bledsoe County with a population of | 7,811 |
| Bradley County with a population of | 38,324 |
| Grundy County with a population of | 11,512 |
| Hamilton County with a population of | 237,905 |
| Marion County with a population of | 21,036 |
| McMinn County with a population of | 33,662 |
| Meigs County with a population of | 5,160 |
| Monroe County with a population of | 23,316 |
| Polk County with a population of | 12,160 |
| Sequatchie County with a population of | 5,915 |
| Total: | 396,801 |

The intervening petition of Jack Mc-Neil and certain other members of the Shelby County legislative delegation is filed "on their own behalf and on behalf of all qualified voters and citizens in their respective congressional districts and all qualified voters and citizens of the State of Tennessee who are, or may become, similarly situated," and avers as follows:

"The average population of the nine congressional districts is 396,-343 with Shelby County thus having an excess of 230,676. Under Chapter 4, Public Acts of 1965, Extraordinary Session, T.C.A. § 2–502,

Note 4—Continued

The Fourth Congressional District would be composed of:

| | |
|---|---:|
| Anderson County with a population of | 60,032 |
| Campbell County with a population of | 27,936 |
| Clay County with a population of | 7,289 |
| Cumberland County with a population of | 19,135 |
| DeKalb County with a population of | 10,774 |
| Fentress County with a population of | 13,288 |
| Jackson County with a population of | 9,233 |
| Macon County with a population of | 12,197 |
| Morgan County with a population of | 14,304 |
| Overton County with a population of | 14,661 |
| Pickett County with a population of | 4,431 |
| Putnam County with a population of | 29,236 |
| Rhea County with a population of | 15,863 |
| Roane County with a population of | 39,133 |
| Scott County with a population of | 15,413 |
| Smith County with a population of | 12,059 |
| Trousdale County with a population of | 4,914 |
| Union County with a population of | 8,498 |
| Van Buren County with a population of | 3,671 |
| Warren County with a population of | 23,102 |
| White County with a population of | 15,577 |
| Wilson County with a population of | 27,668 |
| Cannon County with a population of | 8,537 |
| **Total:** | **396,951** |

The Fifth Congressional District would be composed of:

| | |
|---|---:|
| Davidson County with a population of | 399,743 |
| **Total:** | **399,743** |

The Sixth Congressional District would be composed of:

| | |
|---|---:|
| Bedford County with a population of | 23,150 |
| Cheatham County with a population of | 9,428 |
| Coffee County with a population of | 28,603 |
| Dickson County with a population of | 18,839 |
| Franklin County with a population of | 25,528 |
| Giles County with a population of | 22,410 |
| Sumner County with a population of | 36,217 |
| Hickman County with a population of | 11,862 |
| Houston County with a population of | 4,794 |
| Humphreys County with a population of | 11,511 |
| Lewis County with a population of | 6,269 |
| Lincoln County with a population of | 23,829 |
| Marshall County with a population of | 16,859 |
| Maury County with a population of | 41,699 |
| Moore County with a population of | 3,454 |
| Perry County with a population of | 5,273 |
| Robertson County with a population of | 27,335 |
| Rutherford County with a population of | 52,368 |
| Williamson County with a population of | 25,267 |
| **Total:** | **394,695** |

this excess has been divided in such a fashion that the newly formed seventh congressional district and the newly formed eighth congressional district dominate the excess in Shel-

by County according to the 1960 census and according to registered vote of population, this disenfranchisement being consistent with the main theme of the act which com-

Note 4—Continued

The Seventh Congressional District would be composed of:

| | |
|---|---|
| Benton County with a population of | 10,662 |
| Carroll County with a population of | 23,476 |
| Chester County with a population of | 9,569 |
| Decatur County with a population of | 8,324 |
| Fayette County with a population of | 24,577 |
| Gibson County with a population of | 44,699 |
| Hardeman County with a population of | 21,517 |
| Hardin County with a population of | 17,397 |
| Henderson County with a population of | 16,115 |
| Henry County with a population of | 22,275 |
| Lawrence County with a population of | 28,049 |
| Montgomery County with a population of | 55,645 |
| Madison County with a population of | 60,655 |
| Wayne County with a population of | 11,908 |
| McNairy County with a population of | 18,085 |
| Stewart County with a population of | 7,851 |
| Crockett County with a population of | 14,594 |
| Total: | 395,398 |

The Eighth Congressional District would be composed of:

| | |
|---|---|
| Dyer County with a population of | 29,537 |
| Haywood County with a population of | 23,393 |
| Lake County with a population of | 9,572 |
| Lauderdale County with a population of | 21,844 |
| Obion County with a population of | 26,957 |
| Tipton County with a population of | 28,564 |
| Weakley County with a population of | 24,227 |

The portion of Shelby County lying outside the City of Memphis as of November 3, 1964, and the territory lying within the City of Memphis in Shelby County, as of such date which comprised the following voting wards and precincts:

38th Ward—1st, 2nd, 3rd and 4th precincts
43rd Ward—1st, 2nd, 3rd and 4th precincts
44th Ward—1st, 2nd, 3rd, 4th and 5th precincts
51st Ward—1st and 2nd precincts
33rd Ward—1st and 2nd precincts
54th Ward—1st and 2nd precincts
56th Ward—1st and 2nd precincts
62nd Ward
63rd Ward—1st and 2nd precincts
64th Ward
65th Ward—1st and 2nd precincts
66th Ward—1st and 2nd precincts
67th Ward—1st and 2nd precincts
68th Ward—1st and 2nd precincts                   230,856

|  |  |
|---|---|
| Total: | 394,950 |

The Ninth Congressional District would be composed of all the remaining territory located in the City of Memphis in Shelby County not established as a portion of the Eighth Congressional District as set out by voting wards and precincts above.

|  |  |
|---|---|
| | 396,163 |
| Total: | 396,163 |

pletely ignored a population formula and made the eastern districts of the State much too heavily populated in each of its congressional districts, leaving the seventh and eighth congressional districts still under the average of 396,343 along with dividing Shelby County on a completely unjustified and unconstitutional basis."

Petitioner Smith filed a motion for summary judgment, but our disposition of the case is upon the pleadings and the evidence introduced at the hearing on the merits.

▇ At the hearing, the intervening petitioners appeared in the role of plaintiffs and the original plaintiffs joined the original defendants in the role of defendants. Evidence was introduced establishing the populations of the areas of Shelby County which comprise the ninth district and parts of the seventh and eighth districts as established under the 1965 statute. We take judicial notice of the population of the counties comprising the other congressional districts under the 1960 federal census.[5] 13 U.S. C. § 3; Daniel v. Davis, 220 F.Supp. 601, 603 (E.D.La.).

▇ Under the decision of the Supreme Court in Wesberry v. Sanders, 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481, it is no longer open to question that (1) this court has jurisdiction to determine the issue of whether the Tennessee districting statute is fatally defective under federal constitutional standards; (2) that the "one person, one vote" rule applies in the election of members of the House of Representatives; (3) that Article 1, Section 2 of the Constitution requires "that as nearly as is practicable one man's vote in a congressional election is to be worth as much as another's" (376 U.S. at 7–8, 84 S.Ct. at 530); (4) that "those who framed the Constitution meant that, no matter what the mechanics of an election, whether statewide or

by districts, it was population which was to be the basis of the House of Representatives" (376 U.S. at 8–9, 84 S.Ct. at 530); and (5) that "[w]hile it may not be possible to draw congressional districts with mathematical precision, that is no excuse for ignoring our Constitution's plain objective of making equal representation for equal numbers of people the fundamental goal for the House of Representatives." (376 U.S. at 18, 84 S.Ct. at 535).

In Reynolds v. Sims, 377 U.S. 533, 559, 84 S.Ct. 1362, 1380, 12 L.Ed.2d 506, the Court said:

"In Wesberry v. Sanders, 376 U.S. 1 [84 S.Ct. 526, 11 L.Ed.2d 481], decided earlier this Term, we held that attacks on the constitutionality of congressional districting plans enacted by state legislatures do not present nonjusticiable questions and should not be dismissed generally for 'want of equity.' We determined that the constitutional test for the validity of congressional districting schemes was one of substantial equality of population among the various districts established by a state legislature for the election of members of the Federal House of Representatives."

Following the decision in Wesberry v. Sanders, the congressional districting statutes of a number of states have been held to be unconstitutional: Park v. Faubus, 238 F.Supp. 62 (E.D.Ark.); Meeks v. Anderson, 229 F.Supp. 271 (D.Kan.); Maryland Citizens Committee for Fair Congressional Districting, Inc. v. Tawes, 228 F.Supp. 956 (D.Md.); Calkins v. Hare, 228 F.Supp. 824 (E.D.Mich.); Wilkins v. Davis, 205 Va. 803, 139 S.E.2d 849; see also Martin v. Bush, 376 U.S. 222, 84 S.Ct. 709, 11 L.Ed.2d 656, affirming per curiam 224 F.Supp. 499 (S.D. Texas).

In all of the states in which such statutes have been ruled unconstitutional, in-

---

5. Certain minor errors in the population figures set forth in the Smith and Patten proposals have been corrected in this opinion to conform to the official figures published by the Bureau of the Census.

cluding the Georgia statute in Wesberry v. Sanders, and the Texas statute in Martin v. Bush, the disparity between the most populous district and the least populous district has been larger than the difference of 111,830 or the ratio of 1.32 to 1 between the second and sixth Tennessee districts in the present case. See Annotation, 12 L.Ed.2d 1282, 1288. In some states, however, the ratio was only slightly higher than the 1.32 to 1 ratio here involved. In Michigan the ratio of the most populous district to the least populous was 1.6 to 1; in Kansas 1.44 to 1; in Virginia 1.68 to 1; and in Arkansas 1.73 to 1. In Moore v. Moore, 246 F.Supp. 578 (S.D.Ala., October 4, 1965), sustaining the 1965 Alabama redistricting statute, the ratio was 1.14 to 1.[6]

Even though the Legislature of Tennessee at its 1965 extraordinary session took a long step toward reducing the disparity in population among the nine congressional districts, we are compelled to the conclusion that the 1965 Tennessee statute falls far short of the standard of equality, i. e. "as nearly as practicable," which is required under Wesberry v. Sanders. We reject all contentions that the constitutional test has been met where there exists a disparity of 111,830 between the second and sixth districts, a disparity of 100,048 between the first and sixth districts, a disparity of 94,953 between the third and sixth districts, and a disparity of 70,117 between the fourth and sixth districts.

It is established by both the Smith proposal and the Patten proposal in the present case that it is both possible and practicable to apportion the congressional districts so that their populations will be far more nearly equal than under the 1965 amendment. Both the Smith and Patten proposals demonstrate that it is practicable to arrange the counties of the State into congressional districts with "substantial equality of population." 377 U.S. at 559, 84 S.Ct. 1362. It is further demonstrated that the counties of the State can be arranged in congressional districts in a manner that will not result in any part of any county except Shelby being placed in more than one congressional district, thereby avoiding the partitioning of any county except Shelby, whose population of 627,019 obviously requires partitioning in some manner.

A summary of the comparison of the 1965 Act, the Smith proposal and the Patten proposal is as follows:

### POPULATION PER CONGRESSIONAL DISTRICT

| Dist. | 1965 Act | Patten Proposal | Smith Proposal |
|---|---|---|---|
| 1 | 441,516 | 393,492 | 395,772 |
| 2 | 453,298 | 398,896 | 397,766 |
| 3 | 436,421 | 396,801 | 393,804 |
| 4 | 411,585 | 396,951 | 396,658 |
| 5 | 399,743 | 399,743 | 399,743 |
| 6 | 341,468 | 394,695 | 397,037 |
| 7 | 344,901 | 395,398 | 394,846 |
| 8 | 380,979 | 394,950 | 397,065 |
| 9 | 357,178 | 396,163 | 394,398 |

6. By citing this decision, this court does not indicate an opinion that this large a ratio would be valid in Tennessee.

## POPULATION VARIATION FROM IDEAL (396,343) PER DISTRICT

| District | 1965 Act | | Patten Proposal | | Smith Proposal | |
| | Total | Percent | Total | Percent | Total | Percent |
|---|---|---|---|---|---|---|
| 1 + | 45,173 | 11.39 | − 2,851 | .72 | − 571 | .14 |
| 2 + | 56,955 | 14.3 | + 2,553 | .64 | + 1,423 | .36 |
| 3 + | 40,078 | 10.1 | + 458 | .12 | − 2,539 | .64 |
| 4 + | 15,242 | 3.8 | + 608 | .15 | + 315 | .08 |
| 5 + | 3,400 | .86 | + 3,400 | .86 | + 3,400 | .86 |
| 6 − | 54,875 | 14 | − 1,648 | .42 | + 694 | .18 |
| 7 − | 51,442 | 8.9 | − 945 | .24 | − 1,497 | .38 |
| 8 − | 15,364 | 9.1 | − 1,393 | .35 | + 722 | .18 |
| 9 − | 39,165 | 8.6 | − 180 | .05 | − 1,945 | .49 |

### TOTAL PLUS OR MINUS VARIATION FROM IDEAL

| | | |
|---|---|---|
| 321,694 | 14,036 | 13,106 |

### AVERAGE PLUS OR MINUS VARIATION FROM IDEAL PER DISTRICT

| | | |
|---|---|---|
| 35,744 (9.0%) | 1,560 (.393%) | 1,456 (.367%) |

### DIFFERENCE BETWEEN LARGEST AND SMALLEST DISTRICTS

| | | |
|---|---|---|
| 111,830 | 6,251 | 5,939 |

We express no preference as between the Smith or Patten proposals, but are of the opinion that either of these proposals, if enacted by the Tennessee Legislature, would meet the standards of Wesberry v. Sanders, supra. It may be that the Legislature could enact a statute creating congressional districts even more nearly equal in population than set forth in either the Smith or Patten proposals.

We therefore are of the opinion that the statute in question, Ch. 4, Public Acts of the extraordinary Session of 1965, does not conform to the requirements of Article 1, Section 2 of the Constitution of the United States.

With respect to the intervening petition of Jack McNeil, et al., we find no constitutional infirmity in the partitioning of Shelby County among three congressional districts. Moore v. Moore, supra, 246 F.Supp. 578 (S.D.Ala., Octo-ber 4, 1965). This was a matter of legislative discretion, since the constitutional standard for congressional districts is population rather than geography. Our opinion that the statute is unconstitutional is based upon the disparity of population among the districts and not upon the partitioning of Shelby County among three districts.

We now come to the question of the relief to be granted. Both the Patten intervening petition and the petition of McNeil and others pray that this court enjoin and restrain the defendants from conducting elections under the 1965 statute, and that, pending the enactment of valid legislation, we order that the members of the House of Representatives from the State of Tennessee be nominated and elected from the State at large. Petitioner Smith opposes election from the State at large on the ground that state-

wide elections might upset the representation in the Tennessee congressional delegation as between the two major political parties.

■ We decline at the present time to adopt a remedy which would require that members of the House of Representatives from Tennessee be elected from the State at large, or to formulate any other remedy, pending the enactment by the Legislature of a constitutional plan of congressional districting.

In Reynolds v. Sims, 377 U.S. 533, 585, 84 S.Ct. 1362, 1393, 1394, 12 L.Ed.2d 506, in speaking with respect to reapportionment of a state legislature, the Supreme Court said:

"We do not consider here the difficult question of the proper remedial devices which federal courts should utilize in state legislative apportionment cases. Remedial technique in this new and developing area of the law will probably often differ with the circumstances of the challenged apportionment and a variety of local conditions. It is enough to say now that, once a State's legislative apportionment scheme has been found to be unconstitutional, it would be the unusual case in which a court would be justified in not taking appropriate action to insure that no further elections are conducted under the invalid plan. However, under certain circumstances, such as where an impending election is imminent and a State's election machinery is already in progress, equitable considerations might justify a court in withholding the granting of immediately effective relief in a legislative apportionment case, even though the existing apportionment scheme was found invalid. In awarding or withholding immediate relief, a court is entitled to and should consider the proxim-

ity of a forthcoming election and the mechanics and complexities of state election laws, and should act and rely upon general equitable principles. With respect to the timing of relief, a court can reasonably endeavor to avoid a disruption of the election process which might result from requiring precipitate changes that could make unreasonable or embarrassing demands on a State in adjusting to the requirements of the court's decree. As stated by Mr. Justice Douglas, concurring in Baker v. Carr [369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663] 'any relief accorded can be fashioned in the light of well-known principles of equity.'"

In Martin v. Bush, 376 U.S. 222, 84 S.Ct. 709, 11 L.Ed.2d 656, the Supreme Court continued in effect a stay order entered by Mr. Justice Black, Circuit Justice, upon appeal, until appellants had an opportunity to apply to the district court "for further equitable relief in light of the present circumstances including the imminence of the forthcoming election and 'the operation of the election machinery of Texas' noted by the District Court in its opinion." 376 U.S. at 223, 84 S.Ct. 709.

We find exceptional circumstances and equitable considerations in the present case justifying the court in withholding the granting of immediate relief.

The same 1965 extraordinary session of the Tennessee Legislature that enacted the districting statute which we now hold to be unconstitutional also reapportioned the state legislature by adoption of a statute which has been held constitutional following the most recent hearing in Baker v. Carr, 247 F.Supp. 629 (M.D.Tenn.), November 15, 1965. Thus the Eighty-fifth General Assembly of Tennessee which will convene the first Monday in January 1967 will be composed of senators and representatives

elected under a valid apportionment law, as contrasted with the membership of the Eighty-fourth General Assembly which has been held to be unconstitutionally apportioned. Baker v. Carr, 222 F.Supp. 684 (M.D.Tenn.). The Eighty-fifth General Assembly will be the first constitutionally apportioned legislature to assemble in Tennessee in many years.

It is our conclusion that the public interest will best be served if the 1966 congressional elections are held under Chapter 4, Public Acts of the Extraordinary Session of 1965, and if relief is withheld by this court until after these elections and after the newly apportioned State Legislature has an opportunity to correct the population infirmities of this statute. Preisler v. Sec. of State of Missouri, 238 F.Supp. 187 (W.D. Mo.); Gong v. Bryant, 230 F.Supp. 917 (S.D.Fla.); Moore v. Moore, 229 F.Supp. 435 (S.D.Ala.); Meeks v. Anderson, supra, 229 F.Supp. 271 (D.Kan.); Maryland Citizens Committee for Fair Congressional Redistricting, Inc. v. Tawes, supra, 228 F.Supp. 956 (D.Md.); Calkins v. Hare, supra, 228 F.Supp. 824, 831 (E. D.Mich.) (O'Sullivan, J., separate opinion.).

An order will be entered reserving final judgment herein until after the 1966 elections, and until the Eighty-fifth General Assembly of Tennessee, to be elected in November 1966, has had an opportunity at its regular 1967 session to act upon the matter of congressional redistricting, but not later than June 1, 1967. After that date, or after the date of adjournment of the General Assembly if occurring prior to June 1, 1967, the case may be reopened upon application of any party or upon the court's own motion. Notwithstanding such time limits, full jurisdiction is retained, and if necessary for any reason, this action may be reopened at any time hereafter, either upon the court's own motion or upon the application of any party.